# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>CENTRAL GROCERS, INC., *et al.*,[1]<br><br>                                        Debtors. | Chapter 7<br><br>Case No. 17-13886 (PSH)<br><br>Hon. Pamela S. Hollis |
| Howard B. Samuels, not individually, but as Chapter 7 Trustee of Central Grocers, Inc.,<br><br>                                        Plaintiff,<br><br>vs.<br><br>Ruby J. Farms LLC,<br><br>                                        Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Howard B. Samuels, not individually, but as chapter 7 trustee (the "Plaintiff" or "Trustee") of the estates of Central Grocers, Inc. ("CGI"), Strack and Van Til Super Market, Inc. ("Strack"), and SVT, LLC ("SVT" and, collectively with CGI and Strack, the "Select Debtors"), by and through his undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Ruby J. Farms LLC (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

## NATURE OF THE CASE

1.  Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property by CGI that occurred during the ninety (90) day period prior to the commencement of the bankruptcy

---

[1] The Select Debtors, along with the last four digits of each Select Debtor's federal tax identification number, as applicable, are Central Grocers, Inc. (3170), Strack and Van Til Super Market, Inc. (2184), and SVT, LLC (1185).

1

proceedings of the Select Debtors pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "Bankruptcy Code").  Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers by CGI that may have been fraudulent conveyances.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Select Debtors. Plaintiff does not waive but hereby reserves all of his rights and the rights of the Select Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the Northern District of Illinois, captioned *In re: Central Grocers Inc., et al.,* Case No. 17-13886, pursuant to 28 U.S.C. §§ 157 and 1334(b).

4. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2)(B), (F) and (H), and the Court may enter final orders for matters contained herein.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1409.

## PROCEDURAL BACKGROUND

7. On May 2, 2017, certain creditors of CGI commenced an involuntary case against CGI under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois (the "Court").

8. On May 4, 2017, each of the Select Debtors, including CGI, commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court").

9. On June 13, the Chapter 11 Cases were transferred to this Court, including the Chapter 11 Case of CGI, which was consolidated into the involuntary chapter 7 case pending before the Court. (ECF No. 93). All of the Chapter 11 Cases, including CGI, were ordered to proceed under chapter 11 of the Bankruptcy Code. CGI's commencement date is May 2, 2017 and the remaining Select Debtors' commencement date is May 4, 2017 (as applicable, the "Commencement Date"). All orders entered in the Chapter 11 Cases by the Delaware Court remain in full force and effect and are deemed to be entered in the cases pending before this Court. By Order dated May 5, 2017, these cases are being jointly administered. (Del. Dkt. 17-10993-LSS ECF No. 55).

10. On November 30, 2017, an order was entered by the Court converting the Select Debtors' chapter 11 cases to cases under chapter 7, effective as of December 4, 2017 (the "Conversion Order"). (ECF No. 1085).

11. On January 11, 2018, the Trustee was elected as chapter 7 trustee of the estates of Select Debtors CGI, Strack, and SVT pursuant to section 702 of the Bankruptcy Code. (ECF No. 1168).

12. Pursuant to the schedules filed by CGI, the liabilities of CGI exceed its assets, and therefore general unsecured claims are not expected to be paid in full. (ECF No. 527.) Additionally, as described in the *Motion of Debtors to Convert Chapter 11 Cases to Chapter 7 Cases*, all of the Debtors in these jointly administered cases (including CGI) (collectively, the "Debtors") moved to convert its chapter 11 case to a case under chapter 7 because there were no funds available for the confirmation of a proposed plan of liquidation proceeding under chapter 11. (ECF No. 913). The Debtors collectively proposed that the best way to protect the value remaining in the estates was to convert to cases under chapter 7.

## THE PARTIES

13. Pursuant to Bankruptcy Code sections 547, 548, 550, and 704(a), as well as pursuant to the Conversion Order and the Trustee's election as chapter 7 trustee of the Select Debtors, Plaintiff is authorized and has standing to investigate, pursue, commence, prosecute, compromise, settle, or otherwise resolve certain causes of action under chapter 5 of the Bankruptcy Code, including the instant avoidance action.

14. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that produced fresh produce to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 1331 W. Fairway Drive, Nogales, Arizona 85621. Plaintiff is informed and believes and on that basis alleges that Defendant is a limited liability company residing in and subject to the laws of the State of Arizona.

## FACTUAL BACKGROUND

15. As more fully discussed in the *Declaration of Donald E. Harer in Support of the Debtors' Chapter 11 Petitions and First Day Relief*,[2] CGI was the largest retail food cooperative

---

[2] (Del. Dkt. 17-10993-LSS ECF No. 3).

and distributor in the Chicagoland area. CGI served and was owned by member retailers that operated local supermarkets and large grocery chains.

16.     Prior to the Petition Date, CGI, as a food cooperative and distributor, maintained business relationships with various business entities, through which CGI regularly purchased, sold, received, and/or delivered goods and services.

17.     As a food cooperative and distributor, CGI regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. CGI also regularly paid for services used to facilitate its business.

18.     The Debtors' financial difficulties that led to the decision to file the Chapter 11 Cases are attributable to a combination of factors. In particular, in the weeks leading up to the filing of the Chapter 11 Cases, the Debtors suffered severe trade contraction, as many key vendors tightened credit terms. This constricted the Debtors' ability to access inventory and increased pressure on its already weakened liquidity position. Trade contraction, along with news of the Debtors' financial challenges, lead to an unprecedented level of member defections from CGI. Additionally, many members terminated their supply arrangements without paying down outstanding balances owed to CGI. These events culminated in the petitioning creditors filing the involuntary case against CGI in this Court.

19.     As of the Petition Date, the Debtors utilized and maintained a cash management system for the collection, concentration, management, and disbursement of funds in the Debtors' business.[3] Historically, the Debtors' cash management system was divided into two separate systems. Debtors Strack; SVT; and Currency Express, Inc. comprised one cash management

---

[3] *See Motion of Debtors For Interim and Final Authorization to (I) Continue Using Existing Cash Management System, Bank Accounts, and Business Forms, (II) Implement Ordinary Course Changes to Cash Management System, and (III) Extend Time To Comply With Requirements Of 11 U.S.C. § 345(B)* (Del. Dkt. 17-10993-LSS ECF No. 20).

system (the "Strack Cash Management System"). Debtors CGI; CGI Joliet LLC; Raceway Central, LLC; Raceway Central Calumet Park LLC; Raceway Central Chicago Heights LLC; Raceway Central Downers Grove, LLC; Raceway Central Joliet North LLC; Raceway Central LLC North Valpo; and Raceway Central Wheaten, LLC comprised the second cash management system (the "CGI Cash Management System"). The CGI Cash Management System consisted of several types of bank accounts, including: operating, concentration, and disbursement accounts (collectively, the "CGI Bank Accounts").

20.     Among these bank accounts, disbursements to vendors of CGI were made from the following CGI Bank Accounts, all held by CGI at PNC Bank: accounts ending 9318, 9609, and 8721. Occasionally, CGI also used a PNC Bank credit card to make payments to vendors (collectively with the bank accounts used to make disbursements to vendors, the "CGI Disbursement Accounts").

21.     CGI drew upon the CGI Disbursement Accounts to pay for its operational costs, including payments to its vendors, suppliers, distributors, and other creditors, including Defendant.

22.     During the ninety (90) days before the Petition Date, that is between February 1, 2017, and May 2, 2017 (the "Preference Period"), CGI continued to operate its business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, credit card payment, or otherwise to various entities.

23.     Upon information and belief, during the course of their relationship, CGI and Defendant entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to CGI as described in the "Parties" section of this Complaint.  The details of each of the Agreements paid for during the Preference Period are set

6

forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

24. CGI and Defendant conducted business with one another through and including the Petition Date pursuant to the Agreements.

25. As identified in the Agreements identified on Exhibit A, CGI purchased goods and/or services from Defendant.

26. Plaintiff has completed an analysis of all readily available information of CGI and is seeking to avoid all of the transfers of an interest of CGI's property made by CGI to Defendant within the Preference Period.

27. CGI made transfer(s) of an interest of CGI's property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $46,573.10 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

28. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by CGI of an interest in its property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves his right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## **CLAIMS FOR RELIEF**

### **COUNT I**
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

29. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

30. During the Preference Period, CGI made Transfers to or for the benefit of Defendant in an aggregate amount not less than $46,573.10.

31. Each Transfer was made from one or more of the CGI Disbursement Accounts described *supra,* and constituted transfers of an interest in property of CGI.

32. Defendant was a creditor of CGI at the time of each Transfer by virtue of supplying goods and/or services identified in this Complaint and in the Agreements to CGI, as more fully set forth on Exhibit A hereto, for which CGI was obligated to pay following delivery in accordance with the Agreements. See Exhibit A.

33. Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by CGI to Defendant. See Exhibit A.

34. Each Transfer was made for, or on account of, an antecedent debt or debts owed by CGI to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the CGI. See Exhibit A.

35. Each Transfer was made while CGI was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

36. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

37. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) CGI's case was under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by CGI's schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, CGI's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from CGI's bankruptcy estate.

38. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

39. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

40. To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was incurred by another Select Debtor but paid by CGI, Plaintiff pleads in the alternative that CGI did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

  A. CGI was insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

  B. CGI was engaged, or about to engage, in business or a transaction for which any property remaining with CGI or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

9

    C.    CGI intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

41. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

42. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

43. Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b) and any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548 (collectively, the "Avoidable Transfers").

44. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

45. Pursuant to 11 U.S.C.§ 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT IV
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

46. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

47. Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

48. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

49. Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Select Debtors' chapter 7 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

50. Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Select Debtors' chapter 7 estates or Plaintiff previously allowed by the Select Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A. On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b), 548, and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Select Debtors until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: August 13, 2018

**ASK LLP**

By: /s/ *Joseph L. Steinfeld, Jr.*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
(admitted *pro hac vice*)
Kara E. Casteel, Esq., MN SBN 0389115
(admitted *pro hac vice*)
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3850
Fax: (651) 406-9676
Email: jsteinfeld@askllp.com
Email: kcasteel@askllp.com

*-and-*

Edward E. Neiger, Esq.
151 West 46th Street, 4th Fl.
New York, NY  10036
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for Plaintiff, Howard B. Samuels, as Chapter 7 Trustee of Central Grocers, Inc.*